UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1114(DSD/SRN)

Scott Allen Turnbull,

Plaintiff,

v. **ORDER**

Michael Reuvers, individually and in his capacity as a police officer in the Police Department of the City of St. Paul; Jeffrey Schwab, individually and in his capacity as a police officer in the Police Department of the City of St. Paul; and John Doe #1, individually and in his capacity as a police officer in the Police Department of the City of St. Paul, and the City of St. Paul, a municipal corporation

Defendants.

Matthew H. Morgan, Esq., Gislason & Hunter, P.O. Box 5297, Hopkins, MN 55343-2297 and Elliot L. Olsen, Esq. and Pritzker, Ruohonen & Associates, 33 Sixth Street, Suite 4520, Minneapolis, MN 55402, counsel for plaintiff.

John H. Stechmann, St. Paul City Attorney, 550 City Hall, 15 West Kellogg Boulevard, St. Paul, MN 55102, counsel for defendants.

This matter is before the court upon the motion of defendants for dismissal and for summary judgment. For the following reasons, the motion is granted in part and denied in part.

FILED 2-13-03
Richard D. Sletten, CLERK
Judgment Ent d. ______
Deputy Clerk's Initials ______

## BACKGROUND

In the early morning hours of June 15, 2000, defendant Michael Reuvers ("Reuvers"), an officer of the St. Paul, Minnesota police force, observed a vehicle drive through a stop sign at a high rate of speed. After crossing the intersection, the vehicle struck one or more signs, crashed through a fence and came to rest in a parking lot. The vehicle was driven by plaintiff. Intending to investigate, Reuvers activated his red lights and drove his squad car into the parking lot in front of plaintiff's vehicle. Plaintiff turned his vehicle around and exited the parking lot. Reuvers then activated his siren and pursued plaintiff's vehicle at a high rate of speed for several blocks. After approximately five blocks, plaintiff abandoned his vehicle and fled into a wooded area.[1]

Upon reaching the vehicle and finding it abandoned, Reuvers, a canine officer, released his police dog "Cowboy," issuing the command "find him." Reuvers did not announce that he was releasing the canine. Cowboy entered the wooded area and within a short time located plaintiff. Approaching from behind, Cowboy bit plaintiff on the leg, taking him to the ground. The canine maintained a continuous grip on plaintiff.

---

[1] Plaintiff's recitation of the facts suggests that a passenger, Cornell Williamson, was with him in the vehicle. [Pl.'s Mem. in Opp'n to Defs' Mot. for Summ. J.] However, there is no other reference to the passenger in the parties' memoranda.

Plaintiff claims that Reuvers appeared on the scene moments later, while Cowboy continued to bite and hold his leg. He states that he repeatedly informed Reuvers, "I'm done," asking Reuvers to call off the dog. He contends that Reuvers did not order Cowboy to release him, but instead permitted the dog to bite him on both his arms and legs. He states that because Cowboy continued to bite him, he attempted to protect himself and that Reuvers then kicked him in the face, saying "Get off my partner." Plaintiff alleges that, by that point, other officers had arrived on the scene. Nonetheless, the dog was permitted to continue biting him on his arms and legs. He claims that those officers subsequently beat, kicked and taunted him, even though, after his initial flight, he made no attempt to resist arrest.

Reuvers tells a different version of the facts after Cowboy entered the wooded area.[2] He claims that he followed Cowboy into the woods, heard the dog growling and the suspect screaming and located plaintiff and Cowboy approximately fifteen to thirty seconds later. He asserts that upon reaching the suspect and determining that the area was secure, he ordered Cowboy to release the suspect and immediately took hold of the canine. He states that the other officers arrived on the scene approximately two

---

[2] In considering defendants' motion for summary judgment under Fed. R. Civ. P. Rule 56, the court accepts as true those facts for which plaintiff has presented some admissible evidence and grants them every reasonable inference. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

minutes later. He denies that he or any other officer struck, kicked or used any weapon on defendant at any time.

In the amended complaint, plaintiff names Officer Reuvers, Officer Jeffery Schwab ("Schwab") and Officer John Doe #1 ("Doe") (both also officers of the St. Paul Police Department), each individually and in his official capacity. Plaintiff also names the City of St. Paul under a theory of vicarious liability. He alleges violations of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, as well as battery, assault and false arrest.

Defendants' motion, though styled only as a motion for summary judgment, also seeks dismissal of some claims and parties on procedural bases. Defendants contend that plaintiff failed to properly serve defendants Schwab and Doe in accordance with Rule 4 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and therefore, plaintiff's claims should be dismissed as to those defendants. Defendants also argue that plaintiff's vicarious liability claim against the City of St. Paul fails to state a claim upon which relief may be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). By summary judgment motion, defendants contend that plaintiff's claim of false imprisonment fails as a matter of law and that defendant Reuvers is entitled to immunity from suit.

## DISCUSSION

## I. Motions to Dismiss on the Pleadings

On a motion to dismiss for failure to state a claim upon which relief may be granted, the court must "accept the allegation in the complaint as true." Hafley v. Lohman, 90 F.3d 264, 265 (8th Cir. 1996). Moreover, "[c]ivil rights pleadings should be liberally construed." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995). The court will grant a Rule 12 motion to dismiss only if "it is clear that no relief can be granted under any set of circumstances that could be proved consistent with the allegations." Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993)(quoting Hishun v. King & Spalding, 476 U.S. 69, 73 (1984)).

### A. Defendants Schwab and Doe

Defendants argue that plaintiff failed to serve defendants Schwab and Doe within 120 days of filing his complaint, as required by Fed. R. Civ. P. 4(m). At the hearing on the motion, counsel for plaintiff agreed that, despite earnest discovery, it remains unclear which of the officers, other than Reuvers, actually participated in the alleged beating. For that reason, plaintiff does not oppose dismissal of defendants Schwab and Doe. Because plaintiff cannot show good cause for further delay of service and does not contest the matter, defendants' motion to dismiss all

claims against defendants Schwab and Doe, in both their individual and official capacities, is granted.[3]

**B. Defendant City of St. Paul**

Defendants also move to dismiss defendant City of St. Paul, arguing that plaintiff has failed to plead facts sufficient to show every element necessary to prove either direct or vicarious municipal liability for § 1983 civil rights violations and common law torts.

While "the touchstone of [a] § 1983 action [against a municipality] is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution," such deprivations may be "visited through governmental 'custom' instead." See Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 691 (1978). In either case, an essential element of the claim is an allegation that "official municipal policy of some nature caused a constitutional tort." Id. "[A] municipality cannot be liable *solely* because it employs a tortfeasor--or in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. (emphasis in original).

---

[3] Defendants argued alternatively that defendants Schwab and Doe are entitled to qualified immunity from plaintiff's suit. Because the court has dismissed defendants Schwab and Doe on other grounds, it will not address that argument.

In the present case, plaintiff has not alleged any facts indicating defendant City of St. Paul has either a policy or a custom of depriving citizens of their civil rights. Absent allegations of an official policy or custom that "'causes' [a government employee] to violate another's constitutional rights" (Monell, 436 U.S. at 692), there is no set of circumstances that, if proved, would impose liability directly or vicariously on defendant City of St. Paul. And because plaintiff does not challenge defendants' motion to dismiss defendant City of St. Paul [Pl.'s Mem. in Opp'n to Def.s' Mot. for Summ. J. at 1.], the motion of defendants to dismiss plaintiff's claims against defendant City of St. Paul is granted.

## II. Summary Judgment Motions

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of

the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

Under the doctrine of supplemental jurisdiction, the federal courts may exercise jurisdiction over state law claims that are so closely related to federal question claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Because state law underpins pendent claims, federal courts exercising supplemental jurisdiction must apply state substantive law principles to those claims. See 19 Wright, et al., Federal Practice and Procedure, Juris.2d § 4520. In the present action, the state tort claims of battery, assault and false imprisonment form the factual predicates for plaintiff's federal claim under § 1983 and are part of the same case or controversy. Therefore, it

is appropriate for the court to exercise jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

Defendants move for summary judgment on the § 1983 claim on grounds of qualified immunity, the state battery and assault claims on grounds of official immunity and the false imprisonment claim on the basis of collateral estoppel and the Hecht doctrine.

**A. Qualified Immunity from § 1983 Excessive Use of Force Claims**

Qualified immunity provides protection from civil liability to government agents performing discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). The doctrine ensures that public officials will not be prevented from performing necessary discretionary duties by fear that a mistake will result in personal liability. See Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). Qualified immunity is generally a question of law for the court. See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992)(rehearing and rehearing en banc denied).

Like the question of excessive force under the Fourth Amendment, the qualified immunity inquiry focuses on the reasonableness of the official's conduct. See Saucier v. Katz, 533 U.S. 194, 202-05 (2001). However, the question of immunity must be decided separately from the merits of the case, because the focus

of the reasonableness inquiry differs.[4] See id. While an officer may avoid *liability* for excessive use of force because he reasonably, but mistakenly, believed that the degree of force used was necessary to effectuate arrest, that same officer may avoid *suit altogether* where he reasonably, but mistakenly, believed that no constitutionally protected right was at stake. See id. at 205. In other words, immunity fails only where officers transgress rights they knew or reasonably should have known existed.

Therefore, where a defendant in a § 1983 action moves for summary judgment on the basis of qualified immunity, the court must proceed in the following sequence. First, it must determine whether the plaintiff's statement of the facts alleges a constitutional violation. See id. at 201. If the complaint alleges a constitutional violation, the court must then determine whether the right violated was "clearly established" at the time of the alleged offense. Id. A right is clearly established when a reasonable officer would recognize its application to the present circumstances. See Anderson v. Creighton, 438 U.S. 635, 640 (1987).

Broadly speaking, the Fourth Amendment right to be free from unreasonable and excessive force during arrest and detention is

[4] Further, because a finding of qualified immunity relieves a defendant from the burden of defending a lawsuit altogether, it must be determined as early as possible or its benefit will be effectively lost. See Hunter v. Bryant, 502 U.S. 224, 227 (1991).

clear and well-established. See Graham v. Connor, 490 U.S. 386, 395 (1989); Guite v. Wright, 147 F.3d 531, 535 (8th Cir. 1998). However, the court must examine "the contours of the right" in the specific context faced by the official to determine whether it was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Saucier, 533 U.S. at 202.

In the present case, defendants contend that Reuvers' use of a canine, his election not to announce the release of the canine, the "bite and hold" technique used by the canine and the subsequent degree of force used to detain plaintiff were all protected by qualified immunity. In other words, defendants suggest that a reasonable officer could believe that these actions were lawful even in light of the well-established right to be free of excessive use of force.

Considering defendants' claims of immunity in the context of the facts alleged in plaintiff's complaint, the court finds that the use of police dogs to search out and seize criminal suspects is not objectively unreasonable. While there is a well-established right to be free from excessive force, there is no clearly established corollary right to be free from arrest effectuated or assisted by a properly trained police dog. See Kuha v. City of Minnetonka, 176 F. Supp.2d 926, 931 (D. Minn. 2001); Matthews v. Jones, 35 F.3d 1046, 1051 (6th Cir. 1994); but see Marley v. City

of Allentown, 774 F. Supp. 343, 345 (E.D. PA 1991)(holding it objectively unreasonable to release police dog in pursuit of unarmed misdemeanant). Given that the use of police dogs is common throughout the nation and the fact that this jurisdiction has never recognized a clear right not to be seized by a police dog, it cannot be said that a reasonable officer in Reuvers' position would believe the use of Cowboy was unreasonable or illegal. The court finds that Reuvers' decision to use Cowboy to search for and seize plaintiff did not violate a clearly recognized constitutional right and was therefore not objectively unreasonable.

The court also finds that there is no clearly recognized right in this jurisdiction to be warned in all circumstances of an officer's present intent to release a canine to search for and seize a suspect. See Kuha, 176 F. Supp.2d at 933; but see Vathekan v. Prince George's County, 154 F.3d 173, 179 (4th Cir. 1998)(holding that officer's failure to announce before releasing canine in enclosed area, contrary to department policy, was not objectively reasonable). The court similarly finds that use of the "bite and hold" technique is not contrary to any clearly recognized right. See Kuha, 176 F. Supp.2d at 933; Matthews, 35 F.3d at 1051 (6th Cir. 1994).[5]

---

[5] That is not to say that the *manner* in which a police dog is used can never be unreasonable and excessive. Like a pistol, stun gun or riot baton, a police dog may be used reasonably or unreasonably. See e.g., LaLonde v. County of Riverside, 204 F.3d (continued...)

Defendants also ask the court to find it objectively reasonable for some amount of time to pass between a police dog's initial contact with a subject and the officer's order for the dog to release the suspect. The court believes that a reasonable amount of time between canine contact and release is implicit in its holding because the law permits an officer to use a reasonable degree of force, including a continuous "bite and hold" by a canine, until such time as a reasonable officer faced with similar circumstances would believe the suspect and scene to be under control.[6]

The use of police dogs and the "bite and hold" technique are similar to other physical means of seizing and restraining suspects and detainees. See Chew v. Gates, 27 F.3d 1432, 1458 (9th Cir.

---

[5](...continued)
947, 961 (9th Cir. 2000)(stating, "use of such weapons (e.g., pepper spray; police dogs) may be reasonable as a general policy to bring an arrestee under control)."

[6] Plaintiff suggests that, once he yelled out, "I'm done, call him off," Reuvers was required to order the dog to release its hold and that Reuvers' failure to do so was unreasonable as a matter of law. The court disagrees with plaintiff's contention. In the context of both qualified immunity and Fourth Amendment excessive force doctrine, the law permits an officer making a lawful arrest to use the degree of force a reasonable officer would believe necessary and lawful under the circumstances. Necessity and reasonableness can be determined only a case by case basis. See Anderson v. Creighton, 483 U.S. 635, 640-41 (1987). A suspect's verbal indication of his willingness to surrender is but one of many rapidly evolving circumstances confronting the officer. Ultimately, the officer's ability to control the suspect and to secure the scene, thereby protecting the public, himself and the suspect, must be his paramount considerations.

1994). They often involve direct contact with the suspect. Police officers are permitted to make physical contact with suspects when making arrests, so long as that contact is not unreasonable or excessive. See Mettler v. Whitledge, 165 F.3d 1197, 1203 (8th Cir. 1999)(holding that for encounter to constitute arrest, officers generally must have had some physical contact with arrestee). In some circumstances, extreme, even deadly, contact may be deemed necessary and reasonable. See Tennessee v. Garner, 471 U.S. 1, 3 (1985); Sinclair v. City of Des Moines, 268 F.3d 594, 596 (8th Cir. 2001). Yet in other circumstances, where no significant force is required, even relatively minor force may be objectively unreasonable.

While the court has concluded that the use of a canine, the election not to give advance warning and the use of the "bite and hold" are neither constitutionally prohibited nor objectively unreasonable, excessive use of force clearly is. Specifically, if Reuvers permitted Cowboy to continue biting plaintiff after plaintiff was under control such that a reasonable officer would recognize the force as constitutionally excessive, qualified immunity would not protect him from suit. See e.g., Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000)(holding that duration of canine's bite and hold was subject to objective reasonableness analysis). To have kicked and beaten plaintiff

after he had ceased to resist and was clearly under the officers' control would similarly violate a well-established right.

The court finds that genuine issues of material fact exist concerning the point at which plaintiff came under police control and the officers' subsequent actions. Summary judgment based on qualified immunity is therefore inappropriate insofar as plaintiff alleges Reuvers unreasonably allowed Cowboy to continue biting him and kicked and beat him after he ceased any resistance to arrest. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**B. State Law Tort Claims**

**1. False Imprisonment**

Minnesota law requires that two elements be proven to prevail on a claim of false imprisonment against a police officer: (1) an arrest was effectuated by the defendant, and (2) the arrest was unlawful. See Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974). To be lawful, an arrest without a warrant must be based on probable cause. See State v. Harris, 121 N.W.2d 327, 330 (Minn. 1963)(cert. denied, 375 U.S. 867 (1963)). Probable cause to arrest is "a particularized and objective basis for suspecting the particular persons stopped of criminal activity," given the totality of the circumstances and all reasonable inferences and deductions a trained officer might make. State v. Kvam, 336 N.W.2d 525, 528 (Minn. 1983).

As defendant correctly argues, a defendant's guilty plea acts as a complete bar to a subsequent civil claim of wrongful arrest. See Williams v. Schario, 93 F.3d 527, 528 (8th Cir. 1996). Because plaintiff pleaded guilty to violating Minn. Stat. § 609.487, Fleeing a Peace Officer in a Motor Vehicle, he cannot now contest the lawfulness of his arrest on that charge. See id. The court finds no material issue of fact in dispute regarding the existence of probable cause for arrest and plaintiff's claim of false imprisonment. Because plaintiff does not challenge defendants' motion for summary judgment on Count IV of the complaint [Pl.'s Mem. in Opp'n to Def.s' Mot. to Dismiss at 1.], defendants' motion is granted as to Count IV.

### 2. Official Immunity from State Battery and Assault Claims

Because police officers are permitted to use reasonable force to effectuate arrest, they commit battery or assault only when the force employed is unreasonable. See Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984). Additionally, under Minnesota law, an official exercising discretion in the performance of legal duties is immune from liability "to an individual for damages unless he is guilty of a willful or malicious wrong." Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn. 1976). The official immunity doctrine ensures that officials are not prevented from performing their duties by fear of personal liability in damages. See id. at 678. Discretionary duties are broadly

construed in the context of official immunity. See id. (citing Restatement of Torts 2d § 895D). However, official immunity does not protect defendants against suit for wilful or malicious wrongful acts. See Sulsa v. State, 247 N.W.2d 907, 912 (Minn. 1976). The determination of an official's entitlement to immunity requires an analysis of the facts alleged in the claim. See Elwood, 423 N.W.2d at 678.

Here, plaintiff alleges Reuvers and the other officers committed battery and assault in violation of Minnesota law, through an unreasonable prolonging of the bite and hold and the subsequent physical beating of plaintiff. While the court has concluded that the use of canines generally, an officers' decision not to announce prior to releasing a canine and the "bite and hold" technique are not unreasonable or malicious, the court finds that plaintiff has introduced sufficient evidence to create fact questions as to whether defendants committed battery and assault by: (1) using the canine in an unreasonable and malicious manner, allowing it to continue biting plaintiff after he and the scene were secured, and (2) continuing to beat plaintiff after he had ceased all resistance and was under police control. Viewing the record in the light most favorable to the non-moving party, as is required under Fed. R. Civ. P. 56, the court concludes that genuine issues of material fact exist concerning the point at which plaintiff came under police control and the events alleged to have

followed. Summary judgment on plaintiff's claims of battery and assault on the grounds of official immunity is therefore inappropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss and for summary judgment [Docket No. 18] is granted in part and denied in part. Defendants' motion to dismiss is granted as to defendants Schwab, Doe and City of St. Paul on all counts. Defendants' motion for summary judgment is denied as to defendant Reuvers.

Dated: February 13, 2003

David S. Doty, Judge
United States District Court